## THE ILLINOIS CENTRAL RAILROAD COMPANY
### V.
## SOUTHERN BANK OF THE STATE OF GEORGIA.

*Carriers—Bills of Lading—Indorsement of to Bank—Direction to Deliver to Party Named—Evidence.*

1.  Where a party ships goods which he intends to deliver under a previous contract, but takes the bill of lading to his own order, the delivery of the goods to the carrier will not be held to be a delivery to the person to whom the goods are contracted, for the reason that by taking the bill of lading to his own order, the shipper reserves to himself the power of disposing of the property.

2.  When the property is in the hands of the carrier, the 'bill of lading shows to whom he is to deliver it. The delivery of the bill of lading, properly indorsed, is tantamount to the actual delivery of the goods described in it.

3.  The fact that a bill of lading contains a direction to notify a person named of the arrival of the goods in question, is no indication that he has any interest in the same, nor is it enough to put a person dealing with the bill of lading on inquiry.

4.  Though a bill of lading is fraudulently used, a bank cashing a draft with the bill attached, acquires a good title to the property in question.

[Opinion filed July 23, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. OSBORNE BROS. & BURGETT, for appellant.

It was open to appellant to show that the Weare Commission Company, to whom it delivered the rice, was entitled to the possession thereof.

A common carrier may show, as an excuse for non-delivery pursuant to his bill of lading, that he has delivered the goods to the true owner upon demand. Hentz v. The Idaho, 93 U. S. 575; S. C., 11 Blatch. 218; King v. Richards, 6 Whart. (Pa.) 418; Western Transp. Co. v. Barber, 56 N. Y. 544, 552-3; Bates v. Stanton, 4 Duer (N. Y.), 79; Rosenfield v. Express Co., 1 Woods (U. S.), 131, 133, per Woods, J.; Mason v. Gt. W. Ry. Co., 31 Up. Can. (Q. B.) 73, 89; Sheridan v. New Quay Co., 4 C. B., N. S. (93 E. C. L.) 618, 649; European, etc., Mail Co. v.Royal Mail Steam Packet Co., 10 C. B., N. S. (100 E. C. L.) 860; Nat. Bank v. Chicago, etc., Ry. Co. (Minn.), 46 N. W. Rep. 342-345.

The Weare Commission Company could have maintained an action of trover against appellant for the rice in case of refusal to deliver the rice to it upon its demand. Such company held the title to the rice in trust, first, to pay its debt out of the proceeds, and then to pay the remainder over to Waples. Western Transp. Co. v. Barber, 56 N. Y. 544, 552-3, and cases cited, *supra.*

If no bill of lading had been taken out by Hunter, it could not be denied that the delivery of the rice to the carrier at Savannah was a delivery to the Weare Commission Company.

If a commission merchant has made advances upon certain specific goods, under an agreement with the consignor that they shall be shipped to him to be sold in order that he may retain the proceeds for his reimbursement, or if a commission merchant, being the creditor of the consignor, the goods are delivered to the carrier to be shipped to him in satisfaction of his debt under a previous agreement whereby the specific goods shipped were to be shipped for such purpose, the delivery to the carrier will be a delivery to the commission merchant, and if the destination of the goods is afterward changed without the consent of such merchant, the carrier will be responsible to him for them. Wessel v. Straus, 30 Ohio St. 210.

Messrs. Tenney, Church & Coffeen, for appellee.

Moran, P. J.   This action was brought by the bank against the railroad company to recover for the wrongful delivery of fifty barrels of rice shipped from Savannah, Georgia, by W. D. Waples.

The delivery was to the Weare Commission Company of Chicago.   The bill of lading consigned the rice to the order of said W. D. Waples.   The case was submitted to the court for trial without a jury, and there was a finding and judgment in favor of the bank.

The evidence tended to show that Waples was a dealer in rice at Savannah, and that he had been consigning rice to the Weare Commission Company, at Chicago, to be sold on commission for several years; that in February, 1889, said Waples was in Chicago, and was then indebted to the commission company in some $3,246, for advances made to him on rice, which the commission company then held for him unsold.   The manager of the company complained of the heavy drafts which Waples made against consignments, and told Waples that it was not willing to make such large advances.

After some negotiation, Waples agreed to ship to the commission company fifty barrels of a certain grade of rice, to margin his indebtedness to the company; and he thereupon went to the telegraph office accompanied by a member of the commission firm, and sent a telegram to his agent at Savannah, directing him to ship to the Weare Commission Company fifty barrels of rice.   On February 16th, fifty barrels of rice, of the grade described, were delivered to a common carrier in Savannah for transportation to Chicago.   The Savannah carrier was in transportation connection with appellant, and the rice came to Chicago over appellant's line.   An invoice of this fifty barrels of rice was sent from Savannah, by the agent of Waples, to the Weare Commission Company of Chicago, Illinois, accompanied by a letter from such agent, saying that he handed the company the invoice as per instructions of Waples.   Without going into details, it is sufficient to say that there were facts and circumstances connected with the

receipt of the rice in Chicago, and correspondence with reference to the same, sufficient to lead the Weare Commission Company to the honest belief that the rice had been shipped to them as per their agreement with Waples. It ought, in this connection, to be mentioned that the company agreed that if the rice, when it came to hand, equaled the sample, they would guarantee a price of six and one-fourth cents per pound. Notwithstanding the negotiations with Waples and the sending of the invoice by Waples' Savannah agent to the Weare Company, the bill of lading was taken to the order of Waples at Chicago, Illinois, and across the face of the bill of lading was written "Notify Weare Commission Company." The rice was delivered to the carrier in Savannah on February 16th, and the bill of lading was taken that day by Hunter, Waples' Savannah agent, to the appellee bank, and was indorsed to the bank by Hunter as attorney in fact for Waples, and delivered as collateral security to a note for $720, which amount the bank then and there advanced for Waples' use. The bill of lading continued in the possession of the bank until March 5, 1889, when the $720 loan was paid off. On the same day Waples made a $3,000 draft on the Weare Commission Company, and to secure its payment, attached thereto the bill of lading in question, and two other bills of lading, and thereupon the draft was cashed by the plaintiff bank, to whose order it was drawn. Said draft was forwarded by plaintiff to Chicago for collection, and on March 8th, was presented to the Weare Commission Company and payment refused. On March 2d, the defendant railroad company delivered the fifty barrels of rice in question to the Weare Commission Company. The bank, on its draft being refused, sold the goods covered by the other bills of lading, and applied the proceeds, as far as they would go, in payment of the draft, and brought this action against the railroad company for the wrongful delivery of the fifty barrels of rice.

Appellant's contention is, that the rice was delivered to the carrier under the contract between Waples and their manager.

It may be assumed to be true that Waples fully and fairly agreed to ship this particular rice to the said Weare Commis-

sion Company, and that he ought to have done so, but the difficulty with appellant's contention is, that he entirely failed to do that which, by said agreement, he ought to have done. Where a party ships goods which he intends to deliver under a previous contract, but takes the bill of lading to his own order, the delivery of the goods to the carrier will not be held to be a delivery to the person to whom the goods are contracted, for the reason that by taking the bill of lading to his own order, the shipper reserves to himself the power of disposing of the property. When the property is in the hands of the carrier the bill of lading shows to whom he is to deliver it. The delivery of the bill of lading properly indorsed, is tantamount to an actual delivery of the goods described in it. Waples, therefore, reserved to himself the right to dispose of the property at any time while it was in transit, or at any time after its arrival at the point of destination. It is not pretended that the Southern Bank had any notice of Waples' relations with, or contract obligations to, the Weare Commission Company. The fact that the bill of lading contained a direction to notify the Weare Commission Company, was no indication to the bank that said company had any interest in the fifty barrels of rice.

The words of notice signify nothing more than that an agent at the point of delivery is to be informed; such words are very far from an authority to deliver the goods to the person named, and were not such words as would put a person dealing with the bill of lading on inquiry. Though Hunter's act in pledging the bill of lading to the Southern Bank was, or may be assumed to have been, in violation of Waples' agreement with the Weare Company, such act was at most a breach of contract, and not a fraud. In the Michigan Central R. R. Co. v. Phillips, 60 Ill. 190, though the bill of lading was fraudulently used, the bank which cashed the drafts drawn with the bill of lading attached, was held to have acquired a good title to the property, and such, though there is some contrarity in the decisions, is the general rule. W. U. R. R. Co. v. Wagner, 65 Ill. 197; Taylor v. Turner, 87 Ill. 296.

There is considerable contention on the part of appellant on

the point that even if the bank was a *bona fide* holder of the bill of lading upon the first loan, that its surrender of the bill back to Waples on the payment of said loan, the title of the Weare Company to the goods thereupon becoming complete, and the subsequent pledge of the bill of lading as security for the draft, could not affect their rights. We think it doubtful whether it can be said, in view of all the evidence, that the bank ever surrendered the bill of lading from the time it made the first advance upon it. The transaction was probably a continuous one, and the first loan was paid off from the proceeds of the discount of the draft, but we can not see that it can make any difference whether the bank surrendered the bill of lading on the discharge of the first note; the bill of lading was still in the hands of Waples, and there was no notice to the bank.

The intention with which Waples delivered the goods to the carrier was not changed. When he took the bill of lading, he did not intend that the goods should be delivered to the Weare Company in pursuance of the agreement or understanding which he had with them. He retained the *jus disponendi*, and by taking the bill of lading back from the bank he did not lose that right of disposal; he could, therefore, do with the bill of lading as he pleased, and he disposed of it and of the goods in the place of which it stood, by delivering it to the bank as security for the draft.

The defendant company had no right to deliver the goods except to the order of Waples. The railroad company has discharged itself only by its own wrongful act in delivering the goods in violation of its own bill of lading. While the goods were in transit, that bill of lading stood for them and for a valuable consideration, and without notice of any fact to put it on inquiry, the bank became the holder thereof. It was entitled to the goods, and in default of the goods it is entitled to their value from the appellant.

The finding and judgment of the trial court is right and must be affirmed.

*Judgment affirmed.*